Filed 9/30/20  P. v. Geh CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARCHIRI FON GEH,<br><br>    Defendant and Appellant. | D075858<br><br><br>(Super. Ct. No. SCD279326) |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Archiri Fon Geh, an inmate at the San Diego Central Jail, attacked jail and courthouse deputies on two separate occasions. A jury convicted him of eight counts of resisting an executive officer (Pen. Code, § 69, counts 3 to 6, 9 to 12), two counts each of assault with force likely to inflict great bodily injury on a peace officer (Pen. Code, § 245, subd. (c), counts 1 and 7), and battery on a peace officer with injury (Pen. Code, § 243, subd. (c)(2), counts 2 and 8).[1] The court found true that Geh had served two prior prison terms (§§ 667.5, subd. (b)), and that he had one prior serious felony conviction (§§ 667, subd. (a)(1), 668, & 1192.7, subd. (c)) and one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12). The court imposed a total sentence of 25 years and eight months.

Geh appeals, contending that the trial court erred by (1) not reading the instructions to the jury immediately before deliberations, (2) never orally instructing the jury with CALCRIM No. 337, which admonished the jury not to consider the fact that he was visibly shackled at trial during their deliberations, and (3) not accurately defining "great bodily injury." He also asserts that the prosecutor erroneously stated the legal standard for great bodily injury. We reject his arguments and affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

San Diego Sheriff's Deputy Joel B. escorted Geh from his cell at the San Diego Central Jail to an interview room for a scheduled appointment. As Deputy Joel removed Geh's handcuffs, Geh spun around, punched him in the face, and pushed him toward a doorway. On a scale of one to ten, Deputy

---

1      Undesignated statutory references are to the Penal Code.

Joel described the punch as a ten, "very forceful or painful." As Geh continued to throw punches, Deputy Joel fell to the floor. When other deputies arrived, Geh was on top of Deputy Joel punching him. Deputy Joel is five feet, five inches tall and Geh is six feet, three inches tall and weighs 260 pounds.

Immediately after the attack, Deputy Joel felt dazed and had pain "all over" his head, as well as in his elbows, knees and right "pinky" finger. He later suffered from blurred vision and headaches, and felt pain in his neck and shoulder area. He described experiencing "massive, throbbing pain on the right side of [his] head, and [his] vision turn[ing] white." His face was swollen for a week, and he experienced neck pain and stiffness for a few weeks. Deputy Joel's treating physician testified that individuals who are punched in the face can suffer from a concussion, brain bleeding and bone fractures.

A few days later, San Diego Sheriff's Deputy Lily L. went with another deputy to take Geh to court. After Deputy Lily told Geh to step outside of his cell and face the wall so that she could place a waist chain on him, Geh punched her on the side of her chin and throat. Deputy Lily briefly lost consciousness. When she regained consciousness, she was on the floor and saw her partner struggling with Geh. She immediately got up to help her partner. Deputy Lily L. is five feet, six inches tall and weighed 165 pounds, her partner is five feet, five inches tall and weighed 125 pounds. At least two other deputies responded as Geh continued to resist.

The next day, Deputy Lily's neck hurt and she had trouble turning her head and sleeping. Deputy Lily's treating physician testified that individuals who are punched in the face can suffer facial fractures, cervical spine fractures and brain bleeding.

During closing argument, defense counsel argued that Geh was not guilty of assault with force likely to cause great bodily injury, contending that the amount of force used in the assaults was not likely to cause great bodily injury. Defense counsel conceded Geh's guilt to all other charges.

### III.

### DISCUSSION

A. *The Trial Court Did Not Prejudicially Err in Instructing the Jury*

1. Additional Background

Before jury selection, the trial court orally instructed jurors about the presumption of innocence and the beyond a reasonable doubt burden of proof. The court informed the jurors that they would receive a complete set of written instructions for their deliberations. The court then reviewed the charges against Geh, again informing the jurors that they would receive a set of written jury instructions for their deliberations. After swearing in the jury, the court orally instructed them on evaluating the evidence, including a defendant's right to not testify, and reviewed the elements of all charged offenses.

At the close of evidence, the trial court told the jury that it would "receive a complete set of the instructions in writing from the court when you adjourn to the jury room to undertake your deliberations" and that the court would further instruct on certain aspects of the law. After excusing the jury, the court and counsel spent the remainder of the day finalizing the jury instructions. Trial resumed the following morning at 9:42 a.m. The court minutes indicate that the court "instruct[ed] the jury in the law applicable to [the] case" and, six minutes later, at "9:48 a.m. [the] People present[ed] closing argument." The reporter's transcript, however, reflects only the court

4

generally telling the jury about closing argument but not orally instructing the jury.

During closing argument, defense counsel conceded Geh's guilt to all charges except counts 1 and 7 pertaining to assault on a peace officer with force likely to cause great bodily injury. Based on defense counsel's closing argument, the court determined that it had a sua sponte duty to instruct on simple assault as a lesser included offense. After the prosecutor's rebuttal argument, the trial court orally instructed the jury on simple assault and noted that this instruction would be included with the other written instructions that the jury would receive.

2. Analysis

Geh asserts that the trial court committed structural error requiring automatic reversal when it failed to orally instruct the jury after the close of evidence and before deliberations, and never orally instructing with CALCRIM No. 337, which informed jurors to not consider Geh's physical restraints for any purpose. Alternatively, assuming for purposes of argument that the failure to so instruct is not per se reversible error, he claims that his convictions for assault likely to inflict great bodily injury on a peace officer (counts 1 and 7) must be reversed because the court never orally instructed the jury immediately prior to its deliberations and thus failed to define "great bodily injury" for the jury at this time. Geh argues that the error is not forfeited by defense counsel's failure to raise it in the trial court, claiming that the court had a sua sponte duty to orally instruct the jury and that the error violated his substantial rights.

Because Geh contends that the alleged error affected his substantial rights, we assume that he has not forfeited his claim of error and review it on the merits. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087 (*Ramos*).)

5

Geh concedes that, at some point after jury selection and before the jury began its deliberations, the trial court read most of the instructions to the jury, including the elements of assault on a peace officer likely to produce great bodily injury, as defined by CALCRIM No. 860, which the court read after jury selection and before the presentation of evidence.[2]  The trial court explained that these instructions would "help [the jury] better assess the evidence."  After the People rested and again after closing arguments, the trial court informed the jury that it would receive a set of written instructions.

_____

[2]  The trial court did not read the written instructions verbatim, but instead paraphrased the written instructions in a more conversational manner.  Geh does not complain about any variance between the court's oral instructions and the written instructions.  We find the variance in the oral instructions from the standard written instructions immaterial and also nonprejudicial.  We presume the jury followed the written instructions; the trial court instructed the jurors that they were to "[o]nly consider the final version of the instructions in [their] deliberations," whether they be "printed, typed, or written by hand."  (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1113 ["as long as the court provides accurate written instructions to the jury to use during deliberations, no prejudicial error occurs from deviations in the oral instructions"].)

Section 1093 delineates the order in which a criminal case is to be tried.[3]  Section 1094 grants the trial court broad discretion to depart from the order specified in section 1093.[4]

Two rules may be gleaned from sections 1093 and 1094: "First, when to instruct a jury is a matter within the sound discretion of the trial judge; he [or she] may instruct at any time during the trial.  Second, even when a party requests instructions at the close of argument, if the court has already instructed on the subject it may in its sound discretion refuse to reinstruct.  This necessarily follows from the broad discretion vested in the trial court by

---

[3]     In relevant part, section 1093 provides:
"The jury having been impaneled and sworn, unless waived, the trial shall proceed in the following order, unless otherwise directed by the court: . . .  [¶]  (e) When the evidence is concluded, unless the case is submitted on either side, or on both sides, without argument, the district attorney, or other counsel for the people, and counsel for the defendant, may argue the case to the court and jury; the district attorney, or other counsel for the people, opening the argument and having the right to close.

"(f) The judge *may then charge the jury*, and shall do so on any points of law pertinent to the issue, if requested by either party; and the judge may state the testimony, and he or she may make such comment on the evidence and the testimony and credibility of any witness as in his or her opinion is necessary for the proper determination of the case and he or she may declare the law.  *At the beginning of the trial or from time to time during the trial, and without any request from either party, the trial judge may give the jury such instructions on the law applicable to the case as the judge may deem necessary for their guidance on hearing the case.*  Upon the jury retiring for deliberation, the court shall advise the jury of the availability of a written copy of the jury instructions.  The court may, at its discretion, provide the jury with a copy of the written instructions given.  However, if the jury requests the court to supply a copy of the written instructions, the court shall supply the jury with a copy."  (Italics Added.)

[4]     Section 1094 states:  "When the state of the pleadings requires it, or in any other case, for good reasons, and in the sound discretion of the court, the order prescribed in Section 1093 may be departed from."

virtue of section 1094." (*People v. Valenzuela* (1977) 76 Cal.App.3d 218, 221; see also, *People v. Smith* (2008) 168 Cal.App.4th 7, 14 ["trial courts are vested with wide discretion as to when to instruct the jury. (§§ 1093, subd. (f), 1094 . . . ."].) Where pertinent instructions have been given at the beginning of the case, the trial court is not obligated to repeat those instructions at the end of the case prior to jury deliberations, absent intervening circumstances that might lead to juror confusion. (*People v. Chung* (1997) 57 Cal.App.4th 755, 757-760 (*Chung*).) For example, a trial court has discretion to instruct on circumstantial evidence at the beginning rather than at the end of the trial. (*People v. Webb* (1967) 66 Cal.2d 107, 128.)

The trial court did not err when it failed to reinstruct the jury with CALCRIM No. 860 after the close of evidence and before deliberations. Defense counsel did not object to the earlier instructions and, when it became apparent that the court was not going to orally instruct the jury before sending the jury to deliberate, defense counsel did not request that the court do so or raise an objection. On appeal, Geh has not cited any evidence of juror confusion during trial. "In the absence of such evidence, the presumption that the jurors regularly performed their duties prevails (Evid. Code, § 664), and the trial judge did not abuse his discretion when he gave a portion of the instructions after opening [statements] and a portion of the instructions after closing arguments." (*Chung, supra*, 57 Cal.App.4th at p. 760.)

Moreover, during closing arguments, the prosecutor and defense counsel focused on counts 1 and 7 pertaining to assault on a peace officer with force likely to cause great bodily injury. Both attorneys correctly explained the law regarding this crime. Defense counsel displayed CALCRIM No. 860 on a screen and asked the jurors to read the elements of

8

the crime to themselves. The jury began deliberating less than two days after receiving the court's pre-instructions on the elements of this crime, immediately after hearing closing arguments, and they received a written copy of CALCRIM No. 860.[5] On this record, even assuming that the trial court erred when it failed to reinstruct the jury with CALCRIM No. 860 before jury deliberations, the assumed error was harmless.

Geh also argues that the trial court never orally instructed the jury with CALCRIM No. 337, which admonished the jury not to consider the fact that he was visibly shackled at trial during their deliberations.[6] Citing *Murillo*, *supra*, 47 Cal.App.4th 1104 and *People of the Territory of Guam v. Marquez* (9th Cir. 1992) 963 F.2d 1311 (*Marquez*), Geh claims that the court erred when it failed to orally instruct with CALCRIM No. 337 because it is impossible to determine whether the jurors actually read the written copy of this instruction. Citing section 1127, the People contend that the trial court did not err when it failed to orally instruct with CALCRIM No. 337 because it

---

[5] Geh cites *People v. Merritt* (2017) 2 Cal.5th 819 (*Merritt*) and *People v. Murillo* (1996) 47 Cal.App.4th 1104 (*Murillo*) for the proposition that the trial court's failure to orally instruct on the elements of a charged crime amounts to constitutional error. However, the trial court did orally instruct on the elements of the charged crime—Geh's real complaint is that the court did so too early in the proceedings.

[6] For the first time in his reply brief, Geh complains that the trial court neglected to read CALCRIM No. 224, regarding the sufficiency of circumstantial evidence, to the jury. Geh forfeited this issue by raising it for the first time in his reply brief. (*People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26 [point raised in reply brief untimely].) Nonetheless, we note that the trial court explained the difference between direct and circumstantial evidence during its pre-instructions to the jury and that the jury received a written copy of this instruction.

is within the trial court's discretion whether to orally instruct the jury in addition to providing written instructions.

We agree with Geh that the court erred in failing to orally instruct with CALCRIM No. 337. A trial court must orally instruct even if it provides the jury with written instructions. Section 1127, on which the People rely, provides, in relevant part: "All instructions given shall be in writing, unless there is a phonographic reporter present and he [or she] takes them down, in which case they may be given orally. . . ." Section 1127 ensures the existence of an accurate record necessary for appellate review. (See *People v. DeFrance* (2008) 167 Cal.App.4th 486, 494.) It does not authorize the trial court to instruct the jury with *only* written instructions. The People cite no case holding that a trial court may forego oral instructions if it provides the jury with written instructions.[7] Rather, as section 1128 makes clear, jury instructions are to be delivered orally; that section provides in part: "After *hearing* the charge, the jury may either decide in court or may retire for deliberation." (Italics added.) This language "contemplates the instructions are to be delivered orally. . . ." (*People v. Gloria* (1975) 47 Cal.App.3d 1, 6.)

Although the trial court erred in failing to orally instruct with CALCRIM No. 337, we conclude that on this record, the error is harmless. (*Merritt*, *supra*, 2 Cal.5th at p. 821-822 [court's failure to read instruction on elements of charged crime or provide a written copy of instruction to jury is not structural, but rather is reviewed for prejudicial error]; *Murillo*, *supra*, 47

---

7    The People's reliance on *People v. Lucas* (2014) 60 Cal.4th 153 (disapproved of on other grounds by *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19) is misplaced. In *Lucas*, our high court addressed a written supplemental instruction given by the trial court in response to the jury's inquiries during deliberations. In such a situation, section 1138 gives a trial court the discretion to orally instruct the jury in addition to providing a written clarification. (*Lucas*, at p. 318, fn. 63.)

Cal.App.4th at pp. 1107-1108 [trial court's failure to read instruction to jury over defense counsel objection harmless].)[8] Geh never objected to the trial court's failure to orally instruct the jury with CALCRIM No. 337, or any other instruction the court may not have read. The fact that the jury returned its verdicts after deliberating for only approximately 90 minutes is of little significance because Geh conceded his guilt on all counts other than counts 1 and 7 (assault on a peace officer with force likely to cause great bodily harm). Thus, the jury necessarily focused on this crime and the general instructions.

---

[8] Geh's reliance on *Marquez*, *supra*, 963 F.2d 1311 for the proposition that the failure to orally read the complete instructions to the jury is structural error requiring automatic reversal is misplaced. In *Marquez*, the trial court read some of the instructions and provided many of them in written form, including those on the elements of the crimes and their definitions, but, over the defendant's objection, did not read all of the instructions to the jury. (*Id.* at pp. 1312-1313.) The appellate court held that "all jury instructions must be read aloud to the jury in the presence of counsel and the defendant." (*Id.* at pp. 1314-1315.) The court concluded that the trial court's failure to orally instruct on any of the alleged offenses constituted structural error that required reversal. (*Id.* at pp. 1315-1316.) Specifically, the court found that "the failure of a trial court to instruct the jury orally makes it impossible for an appellate court to determine from the record whether each juror was aware of the elements of each crime before the verdict was rendered." (*Id.* at p. 1312.)

*Marquez* is a federal circuit court decision that may be persuasive, but is not binding on state courts. (See, e.g., *People v. Camacho* (2000) 23 Cal.4th 824, 830, fn. 1.) Rather, we must follow the decisions of our Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), which has consistently held that we must assume that the jury read the written instructions. (See, e.g., *People v. Osband* (1996) 13 Cal.4th 622, 687 [trial court orally misstated instruction, but we presume jury followed written instruction]; *People v. Crittenden* (1994) 9 Cal.4th 83, 138-139 [same]; *People v. McLain* (1988) 46 Cal.3d 97, 111, fn. 2 [same].)

11

The elements of assault on a peace officer with force likely to cause great bodily harm are the willful application of force likely to produce great bodily injury on a peace officer.  (CALCRIM No. 860.)  Geh never argued that the deputies were not peace officers, nor did he claim self-defense or that he had not acted willfully.  The only element at issue was whether the force that Geh used was likely to produce great bodily injury.  The fact that Geh was shackled during trial, which reflected his volatility, was not determinative to this particular question.  Moreover, the evidence convincingly demonstrated that Geh was dangerous.  Without warning or provocation, he brutally pummeled two peace officers in the face.  There was no contrary evidence. On this record it is not reasonably probable that Geh would have obtained a more favorable result if the trial court had orally instructed the jury with CALCRIM No. 337.

B. *CALCRIM No. 860 Is Not Ambiguous*

1. General Legal Principles

We review a claim of instructional error de novo.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  "In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys.  The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights."  (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.)  Where the "determination of error depends on the meaning communicated by an instruction, we must ascertain how a hypothetical 'reasonable juror' would have, or at least could have, understood the words in question."  (*People v. Mickey* (1991) 54 Cal.3d 612, 670.)  " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a

particular instruction.' " (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)  Additionally, we interpret the instructions " 'so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*Ramos*, *supra*, 163 Cal.App.4th at p. 1088.)

The written version of CALCRIM No. 860 provided:

> "The defendant is charged in Counts One ([Deputy Joel]) and Seven ([Deputy Lily]) with assault with force likely to produce great bodily injury on a peace officer in violation of Penal Code section 245(c).
>
> "To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  1A. The defendant did an act that by its nature would directly and probably result in the application of force to a person, and  [¶]  1B. The force used was likely to produce great bodily injury;  [¶]  2. The defendant did that act willfully;  [¶]  3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶]  4. When the defendant acted, he had the present ability to apply force likely to produce great bodily injury to a person;  [¶]  5. When the defendant acted, the person assaulted was lawfully performing his or her duties as a peace officer; AND  [¶]  6. When the defendant acted, he knew, or reasonably should have known, that the person assaulted was a peace officer who was performing his duties.
>
> "Someone commits an act *willfully* when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.
>
> "The terms *application of force* and *apply force* mean to touch in a harmful or offensive manner.  The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough.  The touching does not have to cause pain or injury of any kind.
>
> "The touching can be done indirectly by causing an object or someone else to touch the other person.

13

"The People are not required to prove that the defendant actually touched someone.

"The People are not required to prove that the defendant actually intended to use force against someone when he acted.

"No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was.

"*Great bodily injury* means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.

"A person who is employed as a Deputy Sheriff for the San Diego Sheriff's Department is a peace officer.

"The duties of a deputy sheriff include, but are not limited to: maintaining the operations of county custodial facilities, including the custody, care, supervision, security, movement, and transportation of inmates; providing security and cover to fellow deputies; investigating crimes, detaining suspects, and making lawful arrests.

"An officer's lawful conduct must be established as an objective fact. The defendant's belief about whether the officer was or was not acting lawfully is not relevant."

2. Analysis

Relying on *People v. Medellin* (2020) 45 Cal.App.5th 519 (*Medellin*), Geh asserts that the instructions and the prosecutor's argument misled the jury into finding him guilty of counts 1 and 7 if his assault was likely to inflict injuries that were greater than minor harm. Specifically, he contends that CALCRIM No. 860 creates an invalid legal theory as to what constitutes great bodily injury—i.e., greater than minor harm, which is invalid, or greater than both minor and moderate harms, which is valid. Although defense counsel did not object to this instruction, Geh claims that the issue is not forfeited because the trial court had a sua sponte duty to correct the error and the instruction violated his substantial rights. Alternatively, he asserts

14

that defense counsel was prejudicially ineffective for failing to object to the instruction and request modification of the instruction. The People argue that Geh forfeited his claim by failing to object to the instruction. Assuming that we reach the merits, the People contend that CALCRIM No. 860 correctly states the law.

Generally, a defendant who believes that an instruction is erroneous or requires clarification must request correction or clarification of the instruction to avoid forfeiting the issue on appeal. (*People v. Carrington* (2009) 47 Cal.4th 145, 189.) Where a defendant did not object to the instructions, the contention is forfeited unless the instruction affected the defendant's substantial rights. (§ 1259; *People v. Christopher* (2006) 137 Cal.App.4th 418, 426-427.) Substantial rights are equated with a miscarriage of justice, which results if it is reasonably probable that the defendant would have obtained a more favorable result if the correct instruction had been given. (*People v. Christopher*, at pp. 426-427.)

We consider Geh's argument on its merits because "[a]scertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.) Additionally, to resolve Geh's claim that defense counsel rendered ineffective assistance by failing to object or request modification of the instruction, we must address the merits of the issue.

In *Medellin*, *supra*, 45 Cal.App.5th 519, the trial court instructed the jury with CALCRIM Nos. 875 and 3160 which, like CALCRIM No. 860, defined great bodily injury as "significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." (*Medellin*, at p. 531.) The prosecutor, however, misstated the law by arguing that he was

15

required to prove only that " '[a]n injury is greater than minor.' " (*Id.* at pp. 531, 533.)

A panel of the Fifth District Court of Appeal concluded that a reasonable likelihood existed that the jury understood or applied the prosecutor's argument in an improper or erroneous manner, stating: "The arguments left the jury with two separate definitions for great bodily injury— greater than minor harm, or, greater than both minor and moderate harms. After these competing arguments, the court's actual instructions informed the jury great bodily injury means 'greater than minor or moderate harm.' " (*Medellin*, *supra*, 45 Cal.App.5th at p. 533.) The majority in *Medellin* found the prosecutor's misstatement, standing alone, insufficient to reverse defendant's convictions, but concluded that the ambiguity in the instruction, together with the prosecutor's prejudicially misstating the law by arguing the ambiguity, required reversal. (*Id.* at pp. 533, 535.)

The *Medellin* court explained that " 'Under the plain language of the instruction, the jury could have convicted' [defendant] if they believed either greater than minor harm or greater than moderate harm was sufficient. [Citation.] 'The instruction's "use of the word 'or' . . . indicates an intention to use it disjunctively so as to designate alternative or separate categories." ' " (*Medellin*, *supra*, 45 Cal.App.5th at p. 534.) The dissenting justice agreed that the prosecutor had misstated the law, but found that the instruction at issue correctly stated the law without ambiguity. (*Id.* at p. 538 [conc. & dis. opn. of Detjen, J.].)

The Fifth District recently revisited this issue in *People v. Sandoval* (2020) 50 Cal.App.5th 357 (*Sandoval*). In *Sandoval*, the majority concluded that the definition of great bodily injury in CALCRIM Nos. 875 and 3160 is

16

not ambiguous.[9] We agree with the majority opinion in *Sandoval, supra*, 50 Cal.App.5th 357, that the definition of great bodily injury in CALCRIM Nos. 875 and 3160 is not ambiguous. Because the definition of great bodily injury in CALCRIM No. 860 mirrors the definition used in the instructions at issue in *Sandoval*, the *Sandoval* court's reasoning applies here: " '[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context . . . .' [Citations.] Thus, it is improper to assess the correctness of the instructional definitions of great bodily injury by focusing exclusively on the use of 'or' in the phrase 'minor or moderate harm.' Rather, that phrase cannot be divorced from the one that immediately precedes it: 'injury that is *greater than*' (italics added). '[I]njury that is greater than minor or moderate harm' cannot reasonably be read to mean injury that is more than minor but less than moderate. Such an interpretation simply does not make sense, legally or grammatically, particularly when the phrase is preceded by the explanation that great bodily injury means physical injury that is 'significant or substantial.' " (*Sandoval*, at p. 361.)

"When read as a whole, the definitions of great bodily injury in [these instructions] informed jurors that great bodily injury meant significant or

---

[9]    It is important to note that this case differs from *Medellin, supra*, 45 Cal.App.5th 519. In *Medellin*, the jury was tasked with deciding whether defendant had committed assault with force likely to cause great bodily injury and an accompanying enhancement for inflicting great bodily injury under section 12022.7. (*Medellin*, at p. 523; accord, *Sandoval, supra*, 50 Cal.App.5th at p. 359 [same]; *People v. Quinonez* (2020) 46 Cal.App.5th 457, 460, 461 [same].) The *Medellin* majority concluded that the prosecutor's misstatement of the law regarding the nature of the injury, combined with the perceived ambiguity in CALCRIM No. 860 constituted reversible error. (*Medellin*, at pp. 535-536.) In contrast here, there was no great bodily injury enhancement allegation and, as discussed *post* at part III.C., the prosecutor did not misstate the law.

substantial physical injury, i.e., injury that was greater than moderate harm. There is no reasonable likelihood that the instructions led jurors to believe they could find great bodily injury based on injury that was more than minor but less than moderate, or that they could choose which level of harm to use." (*Sandoval, supra*, 50 Cal.App.5th at p. 362.)[10]

C. *The Prosecutor Did Not Misstate the Law*

1. Additional Background

Counts 1 and 7 charged Geh with assault by means of force likely to produce great bodily injury upon two peace officers, while engaged in the performance of their duties. (§ 245, subd. (c).) The court's oral pre-instruction to the jury listed the elements of this crime and defined great bodily injury as "significant or substantial physical injury, something more than minor or even moderate." The court also provided the jury with a written copy of CALCRIM No. 860, which also stated the elements of the offense and defined great bodily injury as "significant or substantial physical injury. It is an injury that is greater than minor or moderate harm."

During closing argument, the prosecutor argued that great bodily injury meant "significant or substantial, meaning it is more than just a scratch, right, or more than just some redness. But it does not, under the law, require that somebody is permanently impaired, disfigured, was in a coma, anything like that." Defense counsel referenced CALCRIM No. 860 during closing argument, stating, "Great bodily injury is defined in the

---

10    The dissenting justice in *Medellin*, *supra*, 45 Cal.App.5th 519 wrote the majority opinion in *Sandoval*, *supra*, 50 Cal.App.5th 357, with the lead justice in *Medellin* dissenting. The dissent concluded that although [CALCRIM No. 860] was ambiguous, the ambiguity was harmless beyond a reasonable doubt when considered in the context of the entire record because neither party suggested that an injury less than moderate injury would suffice. (*Sandoval*, at p. 364 [conc. & dis. opn. of Snauffer, J.].)

second page right here. It means, significant or substantial injury. It is an injury that is greater than minor or moderate harm. Okay? [¶] And that is the only definition that you can use for great bodily injury." Defense counsel later stated, "So you have to follow that definition of great bodily injury. That's what it means, significant or substantial injury. Okay?"

During rebuttal argument, the prosecutor asserted that Geh had not committed simple assault, and gave the jury examples of simple assault as "waving my hands and being really annoying" and "it looks like I am going to swing at them", slapping the hat off your boyfriend, or a teenager slapping the butt of a girl. The prosecutor continued:

> "Simple assault versus great bodily injury. [¶] If it is a schoolyard fight, and a 70-pound, eight-year-old girl is fighting with another -- or no -- fighting with an 80-pound boy, and she punches him in the stomach, is that force likely to cause great bodily injury? Probably not.
>
> "If a son is really mad at [his] dad, and [he] swing[s] a ruler, and there is some redness on his [dad's] shoulder, is that likely to cause great bodily injury? Of course not. [¶] Is that simple assault? Yes.
>
> "Is an over 6-foot-tall man, who has hands the size of probably a coffee mug, who makes contact with somebody so forcefully that they fall to the ground and are knocked to the ground, is that assault likely to cause great bodily injury? Absolutely.
>
> "He is a linebacker, not a schoolyard girl who weighs 70 pounds. And that is why this case is absolutely not a case of simple assault, and this is a case of force likely to cause great bodily injury.
>
> "Do not benefit the defendant for not causing great bodily injury to these victims.
>
> "If he had caused great bodily injury, we would have had different charges that we would be discussing.
>
> "It is conduct, not the result."

19

2. General Legal Principles

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] However, 'it is improper for the prosecutor to misstate the law . . . .' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*).) "A prosecutor's conduct violates the Fourteenth Amendment of the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial [error] under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

To establish prosecutorial error during comments made to the jury, appellant must show that " '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Centeno*, *supra*, 60 Cal.4th at p. 667.) The defendant has the burden of showing that the jury construed the prosecutor's remarks in an improper or erroneous manner. (*People v. Frye* (1998) 18 Cal.4th 894, 970, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

3. Analysis

Geh contends that the prosecutor misstated the law by arguing that any harm more than minor harm constituted great bodily injury. He claims that the examples of simple assault that the prosecutor gave to the jury during rebuttal argument left the jury with the misimpression that any

20

assault causing more than a "minor" injury constituted an assault likely to produce great bodily injury. Relying on *Medellin, supra*, 45 Cal.App.5th 519, he asserts that the prosecutor's argument, combined with the ambiguous jury instruction, lessened the burden of proof and undermined the presumption of innocence.

Geh concedes that defense counsel did not object to the prosecutor's argument, but claims that the trial court had a sua sponte duty to correct the error and that his defense counsel had no tactical reason to fail to object to an incorrect argument on the law. In the event that we deem the issue forfeited, Geh asserts that defense counsel provided ineffective assistance by failing to object.

To preserve a claim of prosecutorial misconduct or error, a defendant must timely object and request a curative admonition unless an admonition would not have cured the harm caused by the misconduct or error. (*People v. Hinton* (2006) 37 Cal.4th 839, 863.) The failure to raise the issue of prosecutorial error at trial generally forfeits the right to appellate review of that issue. (*People v. Thomas* (2011) 51 Cal.4th 449, 491-492.) Recognizing that defense counsel failed to object to the comments that he challenges on appeal, Geh raises a claim of ineffective assistance of counsel. We do not reach the issue of forfeiture or ineffective assistance of counsel because we conclude that no prosecutorial error occurred.

During closing argument, the prosecutor correctly stated that great bodily injury means "significant or substantial, meaning it is more than just a scratch, right, or more than just some redness. But it does not, under the law, require that somebody is permanently impaired, disfigured, was in a coma, anything like that." Defense counsel displayed a copy of CALCRIM No. 860 on a screen during his closing argument and asked the jury to read

21

the instruction to themselves. Referencing CALCRIM No. 860, defense counsel stated that, "Great bodily injury is defined in the second page right here. It means, significant or substantial injury. It is an injury *that is greater than minor or moderate harm*. Okay? [¶] And that is the only definition that you can use for great bodily injury." (Italics added.) Defense counsel later stated, "So you have to follow that definition of great bodily injury. That's what it means, significant or substantial injury. Okay?"

During rebuttal argument, the prosecutor focused on simple assault on a custodial officer, the lesser included offense to assault on a peace officer with force likely to cause great bodily harm. (CALCRIM No. 900.) The prosecutor provided examples to demonstrate the difference in the force necessary for assault on a peace officer with force likely to cause great bodily harm and its lesser included offense. (*Ante*, pt. III.B.1.)

"Whether a fist used in striking a person would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied." (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748-749.) The force must be likely to produce a great bodily injury and it is immaterial whether the victim in fact suffers any harm. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) If there is a question as to the character of the force used, i.e., whether the force used was likely to produce great bodily injury, the defendant is entitled to an instruction on the lesser included offense of simple assault and the court is required to give such instruction sua sponte. (*People v. Rupert* (1971) 20 Cal.App.3d 961, 968.)

In this case, counsel and the jury necessarily focused on the amount of force that Geh used to decide whether he had committed the greater or instead, the lesser offense. Whether the two deputies actually suffered great

bodily injury was not determinative because CALCRIM No. 860 informed the jury that "No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was." Geh failed to demonstrate that the prosecutor committed error during closing argument; contrary to Geh's assertion, the prosecutor did not argue that any harm more than minor harm constituted great bodily injury.

DISPOSITION

The judgment is affirmed.


AARON, J.

I CONCUR:



DATO, J.

23

BENKE, J., Concurring.

I part company with my colleagues' interpretation of section 1127. I do not start with the proposition that all instructions must be given orally. I read that section as requiring all instructions be given to the jury in writing. The court *may* instruct orally if a reporter is present and the reporter takes the instructions down as they are given to the jury. The imperative under either choice is not necessarily to carve out a manner of instruction. Rather, the written nature of the instructions is to prepare and retain a record for appellate review. (*People v. DeFrance* (2008) 167 Cal.App.4th 486, 494.) I recognize this interpretation would allow the court, without any oral instruction whatever, to hand the jury members a copy of the instructions as they retire out the door to the jury room, to deliberate.

Although I part company with my colleagues on the foundational question as to whether instructions must be orally presented to the jury, I do, however, believe that if the court decides, as it did here, to give any instruction orally, it must give *all* the instructions orally. That is, it may not split the process and give part of the instructions in writing and part orally. Such a "split" procedure would not seem to wholly comport with creating a consistent record for review. For this reason, and my agreement that any error was harmless, I concur.

BENKE, Acting P. J.